UNITED STATES BANKRUPTCY
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| | ) | |
| DENISE L. BLAKE, | ) | No. 16 B 22368 |
| | ) | |
| LATOYA DILLON, and | ) | No. 16 B 25607 |
| | ) | |
| LAJUNISE JONIE MCNEAL | ) | No. 16 B 29604 |
| | ) | |
| | ) | |
| Debtors. | ) | Judge Deborah L. Thorne |

### MEMORANDUM OPINION

These matters come before the court in three chapter 13 cases in which the chapter 13 trustee, Marilyn O. Marshall (the "Trustee") has objected to confirmation of the plans because the debtors have not provided for the turnover of their entire tax refunds, all of which are largely comprised of earned income tax credits ("EIC") or child tax credits ("CTC"). Denise L. Blake, Latoya Dillon, and LaJunise Jonie Mcneal (collectively, the "Debtors") request that each be allowed to retain a portion of their tax refund to cover basic living expenses.[1] The Trustee's objections will be overruled. Each Debtor may offset their annual refund payment with expenses that they will incur throughout the year so long as they are reasonably required to support themselves and their dependents.

---

[1] The court will consolidate the three-captioned bankruptcy cases to consider the issue of whether a debtor may retain some or all of their tax refund, which includes EIC or CTC. *See, e.g., In re Hogue*, 78 B.R. 867 (Bankr. S.D. Ohio 1987) (consolidating several cases to address a single issue regarding chapter 13 plans).

## JURISDICTION AND VENUE

The court has subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1334(a) and the Northern District of Illinois' Internal Operating Procedure 15(a). These matters are core proceedings under 28 U.S.C. § 157(b)(2)(A), (E), & (L). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408-09(a).

## BACKGROUND

Commonly in this district, debtors propose plans which do not consider all the commonly incurred expenses during the applicable commitment period. The budgets proposed by the Debtors are extremely tight. Once debtors receive their tax refund—be it based on tax credits or over-withholding—debtors often seek to modify their plans to use the tax refund for necessary expenses. The court notes that in some instances the debtors have incurred extraordinary expenses, such as costly car or home repairs, but frequently the expenses are ordinary and necessary. This approach causes additional burden on the Trustee and debtors' counsel through the need to consider many requests to modify plans. The additional burden placed on the Trustee, debtors' counsel and the court could otherwise be avoided if the debtors calculated projected disposable income and ultimately projected expenses correctly.[2]

---

[2] Between January 1, 2016 and February 14, 2017, the court received approximately 554 motions to modify a plan. Out of those 554 motions filed, approximately 135 or 24% requested to retain tax refunds for a span of one to four years (the "Motions"). Eighty-one percent of the Motions were granted; 12% are currently pending; 5% were either withdrawn or deemed moot; and only 2% were denied. The top three reasons for debtors wishing to keep their refunds were for (1) car repairs, (2) household expenses, and (3) medical/dental expenses. Other reasons for the Motions related to home repair and payment of tax-related expenses (income and real estate) and assessments. Eighty-five percent of the debtors' income fell below the Illinois median. Seventy-seven percent of the Motions asked for waiver of the tax requirement. Seventeen percent only asked to have it deferred, and 6% asked to increase their payment enough to repay the refund amount.

2

### A. Latoya Dillon

Latoya Dillon ("Ms. Dillon") is a single mother with two dependent children. She filed a chapter 13 bankruptcy petition on August 9, 2016 (Dillon Dkt. No. 1). Ms. Dillon's Form 122C provides that her Current Monthly Income ("CMI") totals $2,759.25 and is below the median income level in Illinois (Dillon Dkt. No. 4).[3] Her modified plan includes a monthly income of $2,580.43 and total expenses of $2,030.00—providing a monthly plan payment of $550.43 (Dillon Dkt. No. 18, p. 1).

Ms. Dillon received a tax refund for 2015 in the amount of $8,081, of which $4,903.00 was attributable to EIC and $2,000.00 to CTC. The remaining $1,178.00 was attributable to over-withholding. In calculating her proposed plan payments, Ms. Dillon utilized her income from Schedule I of her bankruptcy petition (Dillon Dkt. No. 1, p. 36). The Trustee is objecting to confirmation of Ms. Dillon's plan because she has not provided for a turnover each year of the portion of her tax refund attributable to EIC and CTC. Ms. Dillon believes that she should retain her EIC and CTC because Illinois law considers the credits exempt (Dillon Dkt. No. 30, p. 2).

### B. LaJunise Jonie Mcneal

LaJunise Jonie Mcneal ("Ms. Mcneal") is a single mother with one dependent child. She filed a chapter 13 petition on September 16, 2016 (Mcneal Dkt. No. 1). Ms. Mcneal's Form 122C provides that her CMI totals $2,660.96 and falls below the median income level in Illinois[4] (Mcneal Dkt. No. 6, p. 2.). Ms. Mcneal's proposed chapter 13 plan includes a monthly income

---

[3] Based on Ms. Dillon's CMI, her annual income is $33,111. The median annual income for a three-person household in Illinois is $72,429.

[4] Ms. Mcneal's annual income based upon her CMI is $31,931.52. The median annual income for a household of two is $63,896.

3

of $2,101.27 and expenses of $1,897.00 (Mcneal Dkt. No. 7, p. 1). Her proposed monthly plan payments come to a total of $204.27.

Ms. Mcneal received a tax refund for 2015 in the amount of $5,622.00 of which $3,359.00 was attributable to EIC, $1,000.00 was attributable to CTC and $600.00 was attributable to American Opportunity Credit ("AOC"). She also received $663.00 which was attributable to over-withholding. The Trustee is objecting to confirmation of Ms. Mcneal's plan, because it did not include a provision providing for the turnover of her tax refund during the pendency of her chapter 13 case. Ms. Mcneal does not believe that she is required to turn over the entire "tax refund," because the tax credits are not considered income.

### C. Denise L. Blake

Denise L. Blake ("Ms. Blake") is a single mother with three dependent children. She filed a chapter 13 bankruptcy petition on July 12, 2016 (Blake Dkt. No. 1). According to her Form 122C, her CMI totals $2,512.00, (Blake Dkt. No. 12, p. 2), which falls well below the median income in Illinois for a household of four, *Id.* at 3.[5] Ms. Blake's proposed chapter 13 plan lists a "total household monthly income" of $1,542.50 based on her Schedules I and J (Blake Dkt. No. 29, p. 1). In her amended Schedules I and J, she lists a gross monthly income of $1,768.00 (Blake Dkt. No. 48, p. 1).

Unlike the other debtors described in this opinion, Ms. Blake included in her income a monthly pro-rata calculation of her EIC of $168.50. *Id.* She also deducted $394.00 from her gross income reflecting payroll deductions. *Id.* With the deduction of $394.00 and the inclusion of the EIC, Ms. Blake's net income totaled $1,542.50. *Id.* She provides that monthly expenses

---

[5] Ms. Blake's annual income based upon her CMI is $30,144. The median annual income for a household of four is $86,921.

4

total $1,467.75, which leaves her with $74.75 available for monthly plan payments (Blake Dkt. No. 29, p. 1) (using her calculated monthly income from her amended schedules I and J (Blake Dkt. Nos. 28 & 48, both p. 2)). She asks that the court confirm her plan and allow her to retain her EIC, a portion of her tax refund because the EIC is exempt under Illinois law (Blake Dkt. No. 56, p. 4). She also argues that an EIC cannot be included as income under a CMI calculation because it is not defined as income. *Id.* at 5.

The Trustee objected to Ms. Blake's retention of her EIC on an annual basis stating the EIC is included in the definition of "Disposable Income" under section 522 of the Bankruptcy Code. The Trustee also takes the position that even, as Ms. Blake has pointed out, EIC is exempt under Illinois law, and this does not exempt it from funds which should be included in "Disposable Income."

## **DISCUSSION**

Aside from a plan that pays creditors in full, a court cannot confirm a plan over a trustee's objection unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325 (b)(1)(B).

In each of these cases, the Trustee informed the Debtors that she would not recommend their proposed plans if they did not turn over their entire tax refund, including those portions attributable to EIC, CTC, or AOC. The Trustee maintains that any tax refund should be included as disposable income, no matter the source, and turned over to the Trustee shortly after receipt. As discussed below, the court finds that the Debtors can retain a portion of their tax refund,

5

whether it is derived from tax credits or from over-withholding, if they correctly calculate their disposable income and offset that by prorated expenses incurred over a 12-month period.[6]

### A. Disposable Income

The Code defines disposable income as

> current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions. . . .

11 U.S.C. § 1325 (b)(2). CMI, in turn, is defined in section 101(10A) and includes all income and benefits received by the debtor, on average, during the six months prior to filing. 11 U.S.C. § 101(10A). The Code does not provide a definition for income.

What encompasses CMI under section 101(10A) is broad sweeping and only allows for several exceptions. *Id.* (social security benefits and payments to victims of war crimes, crimes against humanity, or terrorism in the CMI calculation). When determining CMI, it is important to note that Schedule I does not reflect a debtor's CMI. *In re Forbish*, 414 B.R. 400, 402 (Bankr. N.D. Ill. 2009) (Goldgar, J.) (explaining that the interaction between Schedules I and J still serves an important purpose to help the court determine the feasibility of a proposed plan). For one, Schedule I includes social security benefits as gross income, while the definition of CMI expressly excludes it. *In re Morales*, 2017 WL 765727, *2 (Bankr. N.D. Ill. Feb. 27, 2017) (Doyle, J.). Secondly, it does not reflect an average of the debtor's gross income during the preceding six months before their bankruptcy petition date. *Id.*

---

[6] The court will address all duplicate arguments set forth by the U.S. Trustee or the Debtors only once. *See Whitehouse v. Piazza*, 2007 U.S. Dist. LEXIS 1431, *20-21 (N.D. Ill. 2007 Feb. 28, 2007).

After calculating CMI, a debtor deducts all reasonable expenses to reach their disposable income. 11 U.S.C. § 1325(b); *see Morales*, 2017 WL 765727 at *4 (explaining that the difference between Schedules I and J does not reflect a debtor's disposable income). Unlike an above-median debtor, if the debtor's CMI is below the state median, "no formal limits are prescribed; reasonably necessary expenses are evaluated on a case-by-case basis." *Morales*, 2017 WL 765727, at *3 (citing *In re Brooks*, 784 F.3d 380, 384 n.3 (7th Cir. 2015)).

The Code does not require a debtor to commit their *actual* disposable income to the plan, but to commit their *projected* disposable income. The Supreme Court examined the process required for a judge to "project" the debtor's disposable income over the course of the plan. *Hamilton v. Lanning*, 560 U.S. 505 (2010). The Court held that the bankruptcy judge "should begin by calculating disposable income, and in most cases, nothing more is required." *Id.* at 519. Yet, the word "projected" allowed for bankruptcy judges "in unusual cases" to "go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.*

Once projected disposable income is calculated, the debtor must also calculate their expected expenses for the same period. The expenses need not be only those expenses that occur on a monthly basis, but may also be those that occur less frequently. For example, this court has observed that debtors commonly pay certain expenses at the time they receive tax refunds. Car repairs need to be attended to, children need new shoes, certain home repairs are required and these are frequently the subject of motions to modify the plan. The court has also observed that if the expenses are legitimate and necessary, the Trustee is usually agreeable.

### B. Over-Withheld Portion of Tax Refunds

The court notes that in each of the three cases, the Debtors' tax refund includes both tax

7

credits and an over-withheld tax liability portion. As a result, the court will address the two portions separately. In reference to the over-withheld portion of a tax refund, it is not necessarily correct to say that it equates to income, as CMI includes income prior to tax withholdings. *Forbish*, 414 B.R. at 402; *In re Curcio*, 387 B.R. 278, 283 (N.D. Fla. 2008) (finding that CMI is in substance the Internal Revenue Service's version of gross income). Courts frequently permit debtors to use their withholding tax amounts in determining their monthly payments if the debtor agrees to turn over their tax refund, which by definition is the difference between their withholding tax payments and their actual tax liability. *In re Spraggins*, 386 B.R. at 226-27. Essentially, a debtor can: (1) deduct their tax withholdings from their CMI and turn over their over-withheld tax refund to the Trustee or (2) calculate their disposable income using their actual tax liability in their expenses and keep that portion of their refund when they receive it. Absent unusual circumstances, the projected monthly amount of actual tax withholding would be one-twelfth of the debtor's prior year's tax liability. *Id.* at 227-28.

### C. Income Derived from Tax Credits

Reinforcing the notion that CMI is broad sweeping; courts have previously held that a debtor must include tax credits as income. *Morales*, 2017 WL 765727, at *4; *Forbish*, 414 B.R. at 403; *In re Royal*, 397 B.R. 88, 101-02 (Bankr. N.D. Ill. 2008) (Hollis, J.). Tax credits within a tax refund differ from the over-withheld portion of a tax refund because they are not automatically factored in CMI. *Morales*, 2017 WL 765727, at *4. As such, each of the Debtors must include their tax credits as income in their CMI in order to keep that portion of their tax refund.

The court recognizes that Illinois law considers the EIC and CTC exempt. *In re Brockhouse*, 220 B.R. 623 (Bankr. C.D. Ill. 1998) (finding the EIC exempt); *In re Fish*, 224 B.R.

8

82, 84 (Bankr. S.D. Ill. 1998) (same); *see In re Vazquez*, 516 B.R. 523, 524 (Bankr. N.D. Ill 2014) (concluding that at least a portion of the CTC is exempt under Illinois law); *In re Koch*, 299 B.R. 523 (Bankr. C.D. Ill. 2003) (same). A recent Eighth Circuit decision found that the CTC is exempt as a public assistance benefit. *In re Hardy*, 787 F.3d 1189, 1193 (8th Cir. 2015). That decision, however, did not consider whether the CTC constituted income under section 101(10A). The parties do not cite and the court has been unable to find support for holding the AOC exempt under Illinois law.

Regardless, exemptions do not allow a debtor to keep their tax credit out of the CMI calculation. *Forbish*, 414 B.R. at 403; *In re Royal*, 397 B.R. at 101-02. In the instance of Ms. Blake, she listed her EIC as monthly income for $168.50, which would allow her to retain $2,022.00 of her tax refund. Accordingly, the Debtors in each of their cases can keep their tax credit portion of their tax refund by including a prorated version (EIC and CTC divided by twelve) of it in their CMI.

The practice of allowing a debtor to keep a portion of their tax refund is common among bankruptcy courts, and the court takes no issue with such practice. *In re King*, 508 B.R. 71 (Bankr. N.D. Ind. 2014); *In re Ramos*, 494 B.R. 181, 187 (Bankr. D.P.R. 2013); *In re Hymond*, 08-41356-RFN-13, 2012 WL 6692196 (Bankr. N.D. Tex. Dec. 21, 2012) (relying on a local rule that prevents a trustee from maintaining more than $2,000.00 of a debtor's tax refund); *In re Skougard*, 438 B.R. 738, 741-42 (Bankr. D. Utah 2010); *In re Lynch*, 415 B.R. 712 (Bankr. N.D. Iowa 2009); *In re Michaud*, 399 B.R. 365, 372 (Bankr. D.N.H. 2008). In fact, the other two trustees in this district allow all debtors to keep $2,000 of their tax refunds and do not seek to retain any portion if the tax refund is the result of tax credits from low-income debtors.

### D. Trustee's Arguments

The court in *Morales* addressed the U.S. Trustee's arguments that the annual tax credit payment as income over twelve months is "illusory" and that it would make the debtor's plan unfeasible because the debtor would not have the actual cash flow each month to make plan payments. 2017 WL 765727, at *5-6. This court adopts the reasoning set forth in *Morales* and the more recent opinion of *Gibson*. *In re Gibson*, 2107 WL 972082 (Bankr. N.D. Ill. Mar. 13, 2017) (Doyle, J.). In particular, the court shines light on the analysis in *Morales* concluding that a debtor must prorate not only their income, but also their expenses based on the instruction forms for Schedules I and J. *Morales*, 2017 WL 765727 at *4; Instructions: Bankruptcy Forms for Individuals 26-28. To further clarify, a debtor must prorate expenses—even expenses occurring just once a year—in their Schedule J. *Id.* at *4-5. These expenses must be reasonably necessary, but are not subject to formal limits. *Id.* A debtor can then include these expenses in their Schedule J to negate their bump in income for the tax credits and avoid a cash shortage. In all, the arguments set forth by the Trustee do not convince the court that a debtor must turn over all, or even any, of their tax refund if the calculations are done properly.

### CONCLUSION

The Trustee's objection to each of these proposed plans are overruled. The Debtors must file amended Schedules I and J as well as amended plans prorating additional income, including their tax credits and over-withholding, and expenses. To the extent that the expenses are reasonable, they may be deducted from the debtors' CMI to determine the appropriate plan

payment, and the plan will be confirmed without language requiring payment of expected tax credits.

ENTERED:

Dated: March 16, 2017

*Deborah L. Thorne*
Deborah L. Thorne
United States Bankruptcy Judge